Mr. Rodman, you may proceed. My name is Jason Scott Rodman. May it please the court, I represent the appellant, Vicki Lynn Brumbaugh. And my argument today is focused on two ways in which the logical bridge is not met. The logical bridge is important because the statute itself cites the reasonable approaches that need to be followed. In addition, the statute itself cites impairments in combination and them need to be considered in the RFC. And so first I want to, first I'm going to talk about the logical bridge with regard to doctor opinions with a focus on nurse practitioner Sleasman. And then second, I'm going to talk about the logical bridge with regard to the residual functional capacity and with a focus on the needs. Regarding Ms. Sleasman, nurse practitioner Sleasman, the weight that was given to the non-examining consultants was more than was due. They were before her, so they did not account for her opinion and they did not examine her. In addition, Ms. Sleasman, on page 31 or AR20, the administrative law judge opinion talks about Ms. Sleasman in isolation, as if she came in out of the blue, issued an opinion, knew nothing about the claimant, and that that's how her assessment should be treated. That doesn't match up with the reality of how a small doctor's office with a nurse practitioner works. The records that would be associated with her knowledge of this claimant are all of Dr. Kuber's records because she's part of that team. Mr. Rodman? Yes. If you had to identify the legal error that you believe that the ALJ committed in one or two sentences, what would it be? I would say that they gave, they did not properly and rationally consider Ms. Sleasman's opinion and the cleanest, simplest error would be that. But in addition, it ties in with... And that has what consequence in your view? An RFC consequence? It had an RFC consequence. It had a sufficient explanation consequence. And the focus, I mean, granted, she was approaching 50, but the grids aren't actually triggered. I don't want that to be mistaken. The grids aren't actually triggered. What is triggered, at least, is there was testimony about a sedentary RFC, potentially, and it was a reduced range of sedentary. And those jobs that were testified by some case law suggest that they're not substantial, which is a hint that this isn't harmless error. But that issue's not really before the court. What's before the court is the logical bridge problems. Another way in which Nurse Practitioner Sleasman's treatment is problematic is that a big chunk of the opinion seems to rest on the fact that there was a gap in treatment from July 2016 to May 2017. However, Nurse Practitioner Sleasman's opinion is October 2016, and she specifically says that the problem she's got, and it seems to have devolved from the earlier opinion by Consultative Examiner Greer, which was more focused on the standing and walking, and then the muscle fatigue and pain, whereas Ms. Sleasman seems to almost tell, I mean, almost intuitively in terms of the gap, almost seems to tell Ms. Brumbaugh that there's not something she can do. She's got to live with the pain. That's a piece of it. That's not the lead piece that's sort of a common sense piece that I thought might be worth noting an oral argument. But in addition, the way the needs come into this opinion aren't, isn't very clear. The needs are not addressed as, you know, are they severe, are they not severe? The last partially favorable decision treated them as non-severe because there was, or the problem with the last decision was that they didn't last a full year. Now they clearly have, but we don't know where the Administrative Law Judge is weighing the needs in that regard. But the problem is that commonsensically a light RFC for someone who's really heavy has all these appointments that focus on weight because the weight would, by the Administrative Law Judge's own account, would affect and exacerbate musculatory conditions. The residual functional capacity of light for this claimant itself has logical errors. In addition, we don't know whether the Administrative Law Judge intended to consider the knee as a subsidiary of the obesity condition, which the Administrative Law Judge called severe. But even then, it's not clear how the knee is accounted for in the residual functional capacity. And I would like to reserve my time and those are the core of my substantive arguments today. That's fine. Thank you. Ms. Jeffrey. May it please the Court, Kia Jeffrey on behalf of the Commissioner. Turning to counsel's first argument regarding nurse practitioner Sleafman, the ALJ properly discounted that opinion. The ALJ found that it was conclusory and vague. And when we actually look at the opinion, the language used by Ms. Sleafman was that Ms. Brumbaugh's condition was chronic and progressive. Now, she submitted that opinion after only seeing Ms. Brumbaugh one time and four months later submitted an opinion to say that her condition was chronic and progressive. There's no other provider in the record who submitted an opinion to that extent saying that Ms. Brumbaugh was that limited. And there's really no other support for such an extreme opinion. Counsel has argued in briefing in today that Ms. Brumbaugh or Ms. Sleafman's opinion was supported by Dr. Kuber's treatment records because they were in the same office. However, when you look at Dr. Kuber's treatment records, they really appear to be primarily focused on assisting Ms. Brumbaugh with weight loss and looking at the physical examinations, they do not show significant physical limitations. Ms. Brumbaugh had a normal gait, normal strength, normal flexibility. In particular, the last treatment record from July 2017 exhibited a normal examination. Ms. Brumbaugh has also argued that really that Ms. Sleafman's opinion explains a gap in treatment. But really what the record reflects is that there was no additional treatment recommended. We don't see any indication that any of Ms. Brumbaugh's providers were stating that she needed surgery or she needed to take any other additional measures to address her pain. In fact, she wasn't really seeking treatment very often. When she did seek treatment, she received injections for knee pain and for shoulder pain, and those appeared to be effective to the extent that Ms. Brumbaugh was walking for exercise. So all of that evidence really does support ALJ's finding that Ms. Brumbaugh could perform a reduced range of light work. The council has also argued that the residual functional capacity finding for light work doesn't have a logical bridge. But as just previously discussed, those treatment records showing that she was reporting that she was able to exercise by walking, her physical examinations showed normal gait and strength, and she wasn't really reporting pain or taking pain medication. Council has also argued that the ALJ did not address Ms. Brumbaugh's knee pain. However, on page 19 of the ALJ's decision, he did discuss Ms. Brumbaugh's knee pain. And noted, I believe, during the relevant time period, Ms. Brumbaugh only sought treatment for knee pain, I believe, three times, twice in 2015 and once in 2016, and received injections. And again, those physical examinations showed that she was able to walk normally. And isn't there more there too? Didn't Dr. Greer state that by February of 2016, the knee issues were largely resolved? Yes, Your Honor. And that also supports the finding that Ms. Brumbaugh could perform light work, which requires standing and walking to a greater extent than sedentary work would require. If there are no further questions for me, Your Honors, I will go ahead and rest on the arguments in our brief and request that the Court affirm. Thank you very much. Mr. Rodman, you had some time left. Is there anything further? I have just a few quick thoughts. One would be that Ms. Sleasman's opinion wouldn't be speculative or conclusory if it were connected to the records that they're logically tied to. And vague in terms of troubleshooting a long time, I'm not sure exactly how that's vague. Somewhere in there, I mean, this claimant, there is some evidence that she did try to avoid the worst of pain medications. And I think that ought to go in her claimant, that ought to go in her favor. And I would also say that she, if she's told to focus on exercise because she's in the highest class of obesity, it's a little illogical to insist that the appointments that focus just on her weight aren't related to her impairments. But in any case, just because something is discussed doesn't mean it's logically accounted for in the residual functional capacity. And I want to draw your attention to the notion that the burden here today, if you were assessing disability, would be on the plaintiff. But in this case, it's about the logical bridge. And I would say the lead argument is for sure regarding Ms. Sleasman. And I thank you for your time. I don't have anything else unless you have questions. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement. And that concludes our argument session for today. The court will be in recess. Thank you very much.